Filed 1/16/24  P. v. Phothirath CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER PHOTHIRATH,<br><br>    Defendant and Appellant. | C097279<br><br>(Super. Ct. No. 01F06798) |

In 2003, a jury found defendant Christopher Phothirath guilty of assault with a deadly weapon or by means of force likely to produce great bodily injury (count 1), attempted murder (count 2), and assault with a firearm (count 3).  The jury found true that defendant committed these crimes for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members.  (Pen. Code, § 186.22, subd. (b)(1).)[1]  With respect

---

[1] Undesignated statutory references are to the Penal Code.

to count 1, the jury found that defendant personally inflicted great bodily injury on the victim, C.B. (§ 12022.7, subd. (a).) With respect to count 2, the jury found defendant was vicariously responsible for a coprincipal's discharge of a firearm causing great bodily injury in the commission of a gang-related crime. (§ 12022.53, subds. (b)-(e).) With respect to count 3, the jury found true that a coprincipal was armed with a firearm. (§ 12022, subd. (a)(1).)

In December 2003, the court sentenced defendant to 14 years and four months plus 25 years to life in prison: the upper term of nine years on count 2 plus 25 years to life for the vicarious firearm use enhancement (§ 12022.53, subds. (d), (e)(1)); a consecutive one-year term on count 1 plus three years four months for the gang enhancement (§ 186.22, subd. (b)(1)) and one year for the great bodily injury enhancement (§ 12022.7, subd. (a)). The court imposed and stayed sentence on count 3 pursuant to section 654.

In 2005, we affirmed the judgment in *People v. Xabandith et al.* (July 5, 2005, C045950) [nonpub. opn.] (*Xabandith*).

In 2019, defendant filed a petition for resentencing under former section 1170.95 (now section 1172.6). We reversed the trial court's denial of defendant's petition in *People v. Phothirath* (May 9, 2022, C092316) [nonpub. opn.]. We remanded to the trial court with directions to issue an order to show cause and hold a hearing under former section 1170.95, subdivision (d). As relevant to this appeal, we further stated "the matter is remanded to the trial court for resentencing as the sentence imposed is unauthorized under [*People v.*] *Gonzalez* [(2009)] 178 Cal.App.4th 1325." (*People v. Phothirath, supra*, 092316.)

On September 2, 2022, the trial court resentenced defendant. Before doing so, the court said, "This has been returned to this Court, both by the Department of Corrections as well as the Third District Court of Appeals, on a resentencing." The court altered the previously imposed sentence on count 1 by staying the gang enhancement and imposing three years (instead of one) for the great bodily injury enhancement. Thus, defendant was

resented to 13 years plus 25 years to life in prison: the upper term of nine years on count 2 plus 25 years to life for the vicarious firearm use enhancement; and a consecutive one-year term on count 1 plus three years for the great bodily injury enhancement.

In this appeal, defendant argues: (1) he is entitled to remand for resentencing due to various ameliorative sentencing laws that were enacted between his trial and resentencing, (2) his gang enhancements and vicarious firearm use enhancement must be reversed due to the retroactive application of amendments to section 186.22 that raised the bar for proof of gang allegations, and (3) the entire judgment must be reversed due to retroactive application of section 1109 regarding bifurcation of trial on gang allegations. We conclude section 1109 does not require the reversal of defendant's convictions or enhancement findings. However, the recent amendments to section 186.22 require reversal of the jury's findings that defendant committed each count for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and its vicarious firearm use findings (§ 12022.53). This conclusion essentially renders defendant's sentencing claims irrelevant. We remand for further proceedings consistent with this opinion.

## I. BACKGROUND

We take the facts from our opinion in defendant's direct appeal, *Xabandith, supra,* C045950:[2]

"This is not a case of conflicting eyewitness accounts. It is remarkable only for what no one saw. No one testified there was any provocation for the beating or for the shooting. No one testified the victim threw gang signs, 'mad dogged' the patrons at the bar, showed any disrespect to the ECC [(El Camino Crips)], or challenged defendants to a fight. No one testified they saw who shot [C.B]. No one heard anyone yell out 'ECC' or claim gang affiliation.

---

[2] We granted defendant's motion to incorporate by reference case numbers C092316, *People v. Phothirath*, and C045950, *People v. Xabandith et al.*

3

"The witnesses did agree, however, on a general chronology of events leading up to the shooting. [C.B.] arrived at a bar on El Camino Avenue in Sacramento at approximately 11:00 p.m. on August 11, 2001. Three friends, all of whom had been drinking beer before they arrived at the bar, accompanied him. [C.B.] sat down at a table with a friend, . . . who was also known as L[]. Aware that a group of Laotian men were giving him 'mean look[s]' and 'mad-dogging' him, [C.B.] decided to go outside to smoke a cigarette.

"Defendants followed him out of the bar. Holding what appeared to be either a beer bottle or beer can, defendant Phothirath asked [C.B.] where he was from or what gang he was from. [C.B.] responded that he was from Chico. Phothirath then asked, 'You know where you at?' and [C.B.] said he was on El Camino. Phothirath threatened, 'I'm going to shoot you.' [L.], who knew both defendants, tried unsuccessfully to intervene and abort a confrontation. Phothirath hit [C.B.], splitting open his chin. [L.] heard a bottle crack.

"Defendants both jumped [C.B.] and began beating him. He ran around a car in the parking lot, ducking and trying to get away, bleeding badly from his chin. One of his friends tried to intervene but was stopped by one of the bystanders. During a momentary break in the action, [L.] went inside the bar to use the bathroom and [C.B.] tried to collect himself by the front door of the bar.

"When [C.B.] and his friend heard shots behind them, they ran across the street to an open field. Bleeding profusely, [C.B.] realized he had been shot. He suffered two gunshot wounds, one in his abdomen and one in his back, had a total of three surgeries, and had to wear a colostomy bag. He had a blood alcohol level of .196 percent." (*Xabandith, supra*, C045950.)

4

## II. DISCUSSION

### A. *Assembly Bill No. 333*

#### 1. *Statutory Background*

Defendant's arguments challenging his underlying conviction and enhancement findings concern Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill No. 333), which became effective on January 1, 2022. (Stats. 2021, ch. 699.) Assembly Bill No. 333 "made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill [No.] 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill [No.] 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill [No.] 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)

"Finally, Assembly Bill [No.] 333 added section 1109, which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. If the proceedings are bifurcated, the truth of the gang enhancement may be determined

5

only after a trier of fact finds the defendant guilty of the underlying offense." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)

### 2. *Forfeiture*

Defendant argues we should reach the merits of his claims regarding the retroactive application of Assembly Bill No. 333 regardless of his counsel's failure to raise these issues at resentencing. He argues that, if we conclude his claims were forfeited, his counsel could not have had a legitimate tactical reason for declining to object based on Assembly Bill No. 333 when doing so would likely result in defendant receiving reversal of all or a substantial part of the judgment against him. The People assert only defendant's bifurcation claim under section 1109 was forfeited on appeal, implicitly conceding defendant's claims related to amended section 186.22 were not. We accept this implicit concession. Further, we will address both claims related to Assembly Bill No. 333 on the merits. As we will explain, defendant's claim related to section 1109 fails regardless of forfeiture or the applicability of section 1109 to these proceedings.

### 3. *Amendments to Section 186.22*

The so-called *Estrada*[3] rule regarding retroactive application of ameliorative statutory amendments applies to Assembly Bill No. 333's amendments to section 186.22. (*Tran, supra*, 13 Cal.5th at p. 1206.) "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657.) "*Estrada* applies to statutory amendments 'which redefine, to the benefit of defendants, conduct subject to criminal sanctions.' [Citation.] Here, 'Assembly Bill [No.] 333 essentially adds new elements to the substantive offense and

---

[3] *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

6

enhancements in section 186.22—for example, by requiring proof that gang members "collectively engage" in a pattern of criminal gang activity, that the predicate offenses were committed by gang members, that the predicate offenses benefitted the gang, and that the predicate and underlying offenses provided more than a reputational benefit to the gang. . . .' [Citations.] These changes have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement,' with obvious benefit to defendants." (*Tran, supra*, at p. 1207.)

The People argue that because defendant's convictions were affirmed and only his sentence was vacated, his convictions are final for purposes of the *Estrada* rule and may not be readjudicated. This is an issue our Supreme Court will be addressing soon. (See *People v. Lopez* (2023) 93 Cal.App.5th 1110 (*Lopez*), rev. granted Nov. 15, 2023, S281488.) In the meantime, we follow those recent authorities that have concluded a defendant is entitled to the retroactive application of Assembly Bill No. 333 at a resentencing such as this one. (*People v. Trent* (2023) 96 Cal.App.5th 33, 44, rev. granted Dec. 20, 2023, S282644 (*Trent*); *People v. Salgado* (2022) 82 Cal.App.5th 376, 378 (*Salgado*).)

*Estrada* explained, "The key date is the date of final judgment. If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then . . . it, and not the old statute in effect when the prohibited act was committed, applies." (*Estrada, supra*, 63 Cal.2d at p. 744.) But this reference to "judgment of conviction" does not refer "only to 'underlying' convictions and enhancement findings, exclusive of sentence. In criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence." (*People v. McKenzie* (2020) 9 Cal.5th 40, 46.) In *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), the People argued Proposition 57's amendments to the law governing the punishment of juvenile offenses in adult criminal court that require hearings to determine whether the offenses should instead be

heard in juvenile court did not apply retroactively in a case that was nonfinal due to the defendant's sentence being vacated in a habeas corpus proceeding. (*Id*. at pp. 158, 162.) Our Supreme Court rejected the assertion that *Estrada* makes a distinction between cases that are nonfinal because the defendant is undergoing resentencing and cases " 'not yet final on initial review.' " (*Id*. at p. 162.) It explained the Legislature has "the prerogative to disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated," but where the Legislature is silent, "[n]othing about this [*Estrada*] presumption is undermined when a case is nonfinal because the defendant's sentence has been vacated rather than because the initial review of the sentence has not yet concluded." (*Ibid*.) Further, the *Estrada* rule makes no distinction between ameliorative laws that reduce punishments directly and those that, like the recent amendments to section 186.22, " 'redefine, to the benefit of defendants, conduct subject to criminal sanctions.' " (*Tran, supra*, 13 Cal.5th at p. 1207.) Thus, in *People v. Valenzuela* (2019) 7 Cal.5th 415, our Supreme Court held that, at resentencing, the defendant's conviction for street terrorism should have been dismissed because "[t]he reduction of defendant's grand theft conviction to a misdemeanor through Proposition 47 resentencing established the absence of an essential element of the street terrorism offense — *felonious* criminal conduct." (*Id*. at p. 419.) The trial court rejected the People's assertion that what mattered was the fact the defendant "committed felonious criminal conduct as it was denominated" at the time the offense was committed and explained, "the felonious character of this conduct is susceptible to reassessment as may be appropriate in light of pertinent developments affecting the criminal codes, so long as the judgment is nonfinal or validly reopened." (*Id*. at p. 428.) We conclude defendant's resentencing requires reassessment of the jury's findings under section 186.22.

The People rely largely on *Lopez, supra*, 93 Cal.App.5th 1110, review granted, to argue the recent changes to section 186.22 were not relevant to the proceedings on remand. In *Lopez*, on direct appeal, the court modified the sentence and reversed

8

conditionally and remanded with directions to consider striking the defendant's prior serious felony conviction enhancement and firearm enhancements. (*Lopez,* supra, at p. 1113.) The appellate court held "because we had reversed solely with respect to the sentence and directed the trial court to resentence defendant, the trial court did not have jurisdiction to reconsider the gang enhancement." (*Id*. at p. 1114.) In *People v. Phothirath, supra*, C092316, this court stated broadly that we were remanding for resentencing. In his opening brief in that appeal, defendant noted the Secretary of the Department of Corrections and Rehabilitation had sent a letter to the superior court explaining that imposing enhancements on count 1 under both section 186.22, subdivision (b)(1) and section 12022.7, subdivision (a) violates *People v. Gonzales, supra*, 178 Cal.App.4th 1325, and recommended resentencing under former section 1170, subdivision (d) (now § 1172.1).[4] Nonetheless, defendant's sentence had yet to be recalled. At resentencing, the court indicated that, in addition to addressing our remand for resentencing, it was recalling the sentence on the recommendation of the Secretary of the Department of Corrections and Rehabilitation pursuant to section 1172.1, subdivision (a). "The court, in recalling and resentencing under this subdivision, shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).) Another Court of Appeal has concluded that a defendant is therefore "entitled to the benefit of Assembly Bill [No.] 333 because his criminal judgment is no longer final following the recall and resentencing" pursuant to former section 1170, subdivision (d). (*Salgado, supra*, 82

---

[4] "Assembly Bill No. 1540 (2021-2022 Reg. Sess.) moved former section 1170, subdivision (d) to a newly created section 1170.03. (Stats. 2021, ch. 719, §§ 3.1, 6.) Assembly Bill No. 200 (2021-2022 Reg. Sess.) renumbered section 1170.03 as section 1172.1. (Stats. 2022, ch. 58, § 9.)" (*Trent, supra*, 96 Cal.App.5th at p. 41, fn. 7, rev. granted.)

Cal.App.5th at p. 378.)  To the extent there is a conflict between *Salgado* and *Lopez*, we do not follow *Lopez*.

*Lopez, supra*, 93 Cal.App.5th 1110, review granted, and the People rely on the last paragraph of the majority's opinion in *Padilla*, which states:  "The Attorney General also contends that applying Proposition 57 to defendants whose sentences are vacated would be inconsistent with 'principles that generally limit the scope of subsequent modification of a judgment after initial finality.'  In support, the Attorney General argues that vacatur of a defendant's sentence 'does not allow a resentencing court to consider new claims or affect any part of the judgment other than the sentence.'  But the right and remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence.  The relief that applies to him is the same as what we approved in [*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*)] for juveniles whose cases were pending when that measure passed:  He must receive a transfer hearing in a juvenile court, where the court will decide whether criminal adjudication is appropriate for the murder of his mother and conspiracy to kill his stepfather.  Whatever potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt."  (*Padilla, supra*, 13 Cal.5th at pp. 169-170; see *Lopez, supra*, at p. 1118.)  The court in *Lopez* found this dicta persuasive and concluded that, in it, "the Supreme Court accepted that the vacation of a sentence would not authorize the relitigation of guilt—even if the conviction is nonfinal and an amendment ameliorating guilt has gone into effect."  (*Lopez, supra*, at pp. 1118-1119.)  While this portion of *Padilla* gives us pause, we are not certain our Supreme Court accepted the People's premise so much as avoided addressing it.

After the People's brief was filed, a different panel of this court concluded that granting a petition for resentencing under section 1172.6 rendered a substantive gang offense (§ 186.22, subd. (a)) nonfinal for purposes of the retroactive application of Assembly Bill No. 333's amendments.  (*Trent, supra*, 96 Cal.App.5th at p. 41, rev.

granted.)  The defendant had filed a petition for resentencing pursuant to section 1172.6 that resulted in his murder conviction being redesignated as assault with force likely to produce great bodily injury and the court resentenced defendant.[5]  (*Trent,* supra, at p. 40; see § 1172.6, subd. (e).)  This court explained:  "[O]nce the petition for resentencing was granted and defendant's murder conviction vacated, the judgment was no longer final for purposes of *Estrada* retroactivity, entitling a defendant to the benefit of ameliorative legislation."  (*Trent, supra*, at p. 44.)  Further, "We believe the final paragraph of *Padilla* was intended to allay concerns that the defendant in that case would request a new adjudication of his guilt in the juvenile court itself and was not intended to divorce the court's retroactivity analysis from instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for possible retrial."  (*Id.* at p. 43.)  As *Lopez* notes, the Supreme Court had already held in *Lara* that a juvenile convicted in adult court whose conviction was entitled to retroactive application of Proposition 57 is entitled to a new transfer hearing that could result in his convictions being treated as juvenile adjudications but not in a relitigation of guilt.  (*Lopez, supra*, 93 Cal.App.5th at p. 1118, rev. granted, citing *Lara, supra*, 4 Cal.5th at pp. 303, 309-310, 312-313.)  Thus, if there were concerns that the defendant in *Padilla* would request a new adjudication of his guilt, those concerns would have arisen because the outcome in *Padilla* suggests, as we have concluded, that resentencing makes some substantive ameliorative laws retroactively applicable.  The court in *Padilla* could not alleviate that concern without suggesting, as it might have done, that it was not yet endorsing that conclusion.  Nonetheless, we agree with *Trent* and

---

[5]  Where a petitioner is successful under section 1172.6, the trial court shall "vacate the murder . . . conviction and . . . recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).)

11

not *Lopez* in concluding that we cannot read too much into this passage. The remainder of the court's discussion in *Padilla* leads us to the conclusion that the amendments to section 186.22 applied to defendant's convictions based on his resentencing.

The jury's true findings on the gang enhancement allegations on each count must be vacated because we cannot conclude beyond a reasonable doubt that the verdict would have been the same if the jury was instructed under the new law. (*Tran, supra*, 13 Cal.5th at p. 1207.) In particular, the prosecution's gang expert opined that the charged offenses benefited the El Camino Crips by enhancing their reputation.

The amendments to section 186.22 also require the reversal of the firearm enhancement with respect to count 2. Section 12022.53, subdivisions (b) through (d) provide for escalating punishments for individuals who personally use a firearm depending on how the firearm is used. Section 12022.53, subdivision (e)(1) expressly incorporates section 186.22, subdivision (b) and provides the penalties may also be imposed on any principal in the offense if: (1) the principal "violated subdivision (b) of Section 186.22" (§ 12022.53, subd. (e)(1)(A)) and (2) "[a]ny principal in the offense committed any act specified in subdivision (b), (c), or (d)" (§ 12022.53, subd. (e)(1)(B).

With respect to count 2, the jury found true that defendant was a principal, and a coprincipal personally and intentionally discharged a firearm causing great bodily injury. The jury found not true that defendant personally used a firearm in the commission of the offense. As such, without a valid finding under section 186.22, subdivision (b), all the jury's firearm enhancement findings under section 12022.53 must be vacated and none of the enhancements under section 12022.53, subdivisions (b) through (d) may be imposed.

### 4.    *Bifurcation*

Defendant argues newly enacted section 1109 requires reversal of all his convictions and enhancements. We disagree.

The parties dispute whether section 1109 applies retroactively. There is a split of authority on this question. (See *Tran, supra*, 13 Cal.5th at p. 1208 ["The question of

whether section 1109 applies retroactively is the subject of a split of authority among the Courts of Appeal"].)

Even if section 1109 is retroactive, defendant has not shown it is reasonably probable that a result more favorable to defendant would have been reached had the gang allegations been bifurcated. (See *Tran, supra*, 13 Cal.5th at p. 1209 [applying *People v. Watson* (1956) 46 Cal.2d 818 standard for state-law error].)

"[N]othing in Assembly Bill [No.] 333 limits the introduction of gang evidence in a bifurcated proceeding where the gang evidence is relevant to the underlying charges." (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132.) "Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) Here, the evidence was relevant at least as to motive.

Defendant argues the failure to bifurcate resulted in the jury hearing testimony about crimes committed by his gang and distracted the jury from focusing on the weaknesses in the prosecution's case. Even if some of this evidence would have been excluded in a bifurcated proceeding, defendant has not shown it is inflammatory in comparison with evidence of the charged crime or that weaknesses existed in the prosecution's case. Defendant argues "[t]he prosecution's case for guilt was not overwhelming insofar as the jury had to draw inferences about what [defendant] actually did and actually intended." This point is not particularly compelling given that defendant threatened to shoot the victim. Likewise, defendant argues the jury heard evidence he hit the victim and split open his chin, and one witness heard a bottle crack, but no witness testified to *seeing* him hit the victim with a bottle. This distinction is unpersuasive given that the jury convicted defendant of committing assault with a deadly weapon *or* by force

13

likely to produce great bodily injury. (Stats. 1999, ch. 129, § 1, former § 245, subd. (a)(1).)

On this record, we conclude that even if section 1109 applies retroactively to defendant's case, there is no reasonable probability he would have obtained a more favorable result had the trial been bifurcated. As such, only the jury's gang enhancement findings and gang-related vicarious firearm enhancement findings require reversal. With this in mind, we now turn to defendant's arguments concerning his sentence.

B.      *New Sentencing Laws*

Defendant argues we must remand for resentencing because he is entitled to the retroactive application of various ameliorative sentencing laws that were enacted after his trial but before his resentencing.

1.      *Laws Implicating Defendant's Vicarious Firearm Use Enhancement*

First, defendant argues he is entitled to remand for resentencing to have the trial court consider whether to exercise its discretion to dismiss his vicarious firearm use enhancement in the interest of justice pursuant to section 12022.53, subdivision (h), which was enacted by Senate Bill No. 620 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 682, § 2).

Second, defendant contends he is entitled to remand for resentencing for the trial court to consider whether to dismiss the 25-year to life term for the vicarious firearm use enhancement it imposed on count 2 and the three-year term for the great bodily injury enhancement it imposed on count 1 based on mitigating factors enumerated in section 1385, subdivision (c)(2), which was enacted by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1).

Section 1385, subdivision (c), provides: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to

14

evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Defendant relies on the mitigating circumstances set forth in subparagraphs (B) and (C): "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B) & (C).)

Defendant's claims regarding Senate Bill Nos. 620 and 81 are predicated on the imposition of his vicarious firearm use sentencing enhancement. Because we have reversed the imposition of this enhancement for other reasons, we need not address either claim. Similarly, the remainder of defendant's sentence is of limited relevance given the need for remand. Nonetheless, we will now address defendant's arguments regarding the remainder of his sentence.

### 2. *Amendments to Sections 1170 and 654*

First, defendant argues we must vacate the upper term for his conviction for attempted murder and impose no greater than the lower term pursuant to recent amendments to section 1170 enacted by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3). "Senate Bill [No.] 567 amended section 1170, subdivision (b) to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44.) Additionally, the court must now impose the low term if the person's youth was a contributing factor in the commission of the offense, "unless the

15

court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) Defendant was 18 when the crimes at issue were committed.

Second, defendant argues resentencing is required so the court may consider whether, under amended section 654, to impose and execute sentence on count 3 and stay execution of sentence on count 2 instead. Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) amended section 654, subdivision (a) to provide, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law may be punished under *either of such provisions*, but in no case shall the act or omission be punished under more than one provision." (Italics added.) At the time of his original sentencing, the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term. (§ 654, former subd. (a).) As amended, "section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

The People argue defendant forfeited these issues by failing to raise them at sentencing. We agree. "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) "In essence, claims deemed waived on appeal involve sentences which, though otherwise

permitted by law, were imposed in a procedurally or factually flawed manner." (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

Defendant argues any failure to preserve these sentencing issues was due to ineffective assistance of counsel.

To establish a claim of ineffective assistance of counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid.*)

Defendant argues his counsel at resentencing could have had no legitimate tactical purpose for failing to raise these issues. We surmise there could have been a legitimate reason why defense counsel may have chosen not to object. As the People note, there is nothing in the record indicating the trial court was not aware of these new laws. The record shows the trial court was aware of Senate Bill No. 620 in particular. The trial court continued an earlier resentencing hearing to obtain a supplemental report from the Department of Corrections and Rehabilitation on resentencing as it relates to striking the firearm enhancement. Defense counsel may have believed the trial court had considered the current sentencing laws and any further argument would be futile.

Defendant argues the court's obligation to vacate the upper term of nine years imposed for count 2 and impose nothing more than the low term is mandatory absent specified circumstances. At his original sentencing, the trial court imposed the upper term for count 2 on the basis that defendant was on probation at the time the crime was committed. Defense counsel may have believed objecting to any failure of proof as to this fact under section 1170, subdivision (b) would be futile. Likewise, based on the

17

court's failure to reduce the sentence to the lower term, defense counsel may have understood the trial court had implicitly concluded "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice" under section 1170, subdivision (b)(6).  On this record, we cannot conclude there was no satisfactory reason for counsel's failure to object to defendant's sentence.  Nonetheless, we emphasize our conclusion that defendant's claims are forfeited for purposes of this appeal does not preclude him from raising them at further resentencing.

### III.  DISPOSITION

The jury's true findings that defendant committed each count for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and its vicarious firearm use findings (§ 12022.53) are reversed.  The cause is remanded to provide the People an opportunity to retry the vacated findings in compliance with amended section 186.22.  If the People elect not to do so, the trial court shall resentence defendant.  In all other respects, the judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
MAURO, Acting P. J.

/S/

_____
MESIWALA, J.

18